UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NORTHLAND RADIOLOGY,

                    Plaintiff,                                   Civil Action No. 19-cv-13528

vs.

                                                                HON. MARK A. GOLDSMITH

ESURANCE INSURANCE COMPANY,

                    Defendant.

_____/

**OPINION & ORDER**
**DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. 27)**

Plaintiff Northland Radiology, a diagnostic imaging center, brought suit against Defendant

Esurance Insurance Company to recover benefit payments allegedly due to Cametress Hardy, an

individual who was insured by Esurance and who allegedly assigned her collection rights to

Northland Radiology. Esurance filed a motion for summary judgment (Dkt. 27). For the foregoing

reasons, the Court denies Esurance's motion.[1]

**I. BACKGROUND**

Northland Radiology submits that Hardy sustained injuries in a car accident, and that

Esurance was required to make personal protection insurance (PIP) payments covering these

injuries under the Michigan No-Fault Insurance Act, Mich. Compl. L. § 500.3105 (No-Fault Act).

See Exhibits to Notice of Removal at PageID.25–26 (Dkt. 1-1).[2] Northland Radiology claims that

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to the motion, the briefing includes Northland Radiology's response (Dkt. 28).

[2] Northland Radiology's complaint and its individual patient report for Hardy are contained within the exhibits attached to Esurance's notice of removal.

1

it provided reasonably necessary products and services to aid in Hardy's care, recovery, and rehabilitation following the accident. Id. at PageID.26. Hardy assigned all of her rights to payment for these services and products to Northland Radiology pursuant to assignment forms she signed on multiple occasions, including at each regularly scheduled medical appointment. Id. at PageID.27, 30–31; Resp. at 14; Assignments (Dkt. 28-2).

Northland Radiology alleges that it submitted timely billings to Esurance for the products and services it provided to Hardy, but Esurance has delayed or refused to make the requested payments. Exhibits to Notice of Removal at PageID.26–27. Northland Radiology brings this action based on (i) Esurance's alleged obligation to make PIP payments under the No-Fault Act, which Northland Radiology has the right to prosecute as assignee of the injured party under Mich. Comp. L. § 500.2041; and (ii) Esurance's alleged breach of contractual and statutory duties. Id. at PageID.25–28.

Esurance now moves for summary judgment on these claims.

## II. ANALYSIS[3]

The No-Fault Act mandates that insurers provide PIP benefits to insured parties and other parties covered by the statute. See Meemic Ins. Co. v. Fortson, 954 N.W.2d 115, 119–120 (Mich. 2020). It is "common practice" for insurers to pay healthcare providers directly for their provision of services required by the No-Fault Act, which may occur pursuant to the covered parties' assignments of their collection rights to the providers. Covenant Med. Ctr., Inc. v. State Farm

---

[3] The Court applies the traditional summary judgment standard as articulated in Scott v. Harris, 550 U.S. 372, 380 (2007). The movant is entitled to summary judgment if that party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). If the movant makes an initial showing that there is an absence of evidence to support the nonmoving party's case, the nonmovant can survive summary judgment only by coming forward with evidence showing there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324–325 (1986).

Mut. Auto. Ins. Co., 895 N.W.2d 490, 500, 505 n.40 (Mich. 2017); N. Shore Inj. Ctr., Inc. v. Home-Owners Ins. Co., No. 340357, 2019 WL 939031, at *2 (Mich. Ct. App. Feb. 26, 2019) (finding that an insured party can assign its rights to collect PIP benefits to multiple providers, each of which can bring a claim against the insurer). A provider of PIP benefits has "a legally legitimate interest in being paid for the medical services it provides to an injured person." Est. of Lyle v. Farm Bureau Gen. Ins. Co. of Michigan, No. 343358, 2019 WL 4555993, at *3 (Mich. Ct. App. Sept. 19, 2019) (citing Covenant, 895 N.W.2d 490).

Esurance argues that (i) Hardy's assignments of her claims to Northland Radiology were invalid and (ii) Hardy's allegedly fraudulent claims preclude recovery under the wrongful-conduct doctrine. Mot. at 14–23. The Court addresses each argument in turn. As to Esurance's first argument, the Court begins by addressing whether Esurance has standing to challenge assignments to which it was not a party.

### A. Esurance's Standing to Challenge Hardy's Assignment to Northland Radiology

Under Michigan law, a litigant who is not a party to an assignment generally "lacks standing to challenge that assignment." Livonia Props. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC, 399 F. App'x 97, 102 (6th Cir. 2010) (punctuation modified, citation omitted); see also id. at 102–103 (citing Bowles v. Oakman, 225 N.W. 613, 614 (Mich. 1929) (holding that the maker of a promissory note could not challenge his obligations under the note by asserting that the assignment was invalid and noting that the note-maker "had no defense of his own to the note")); Pashak v. Interstate Highway Const., Inc., No. 189886, 1998 WL 2001203, at *1 (Mich. Ct. App. Mar. 20, 1998) (finding that the lessee of certain property did not have standing to challenge the lessor's assignment of rights in the lease to a subsequent purchaser because "the parties to the assignment . . . [did] not contest its validity")).

3

"[A] third party may only challenge an assignment if that challenge would render[] the assignment absolutely invalid or ineffective, or void," rather than "merely voidable." Conlin v. Mortg. Elec. Registration Sys., Inc., 714 F.3d 355, 361 (6th Cir. 2013) (punctuation modified, citation omitted). The defenses available to third parties challenging assignments are "nonassignability of the instrument, assignee's lack of title, and a prior revocation of the assignment." Livonia, 399 F. App'x at 102. The presence of these factors allows third parties to challenge assignments because those third parties "cannot otherwise protect themselves from having to pay the same debt twice." Id. Where a third party has "not asserted any of the defenses from Livonia" and it is not "clear that any of the defenses apply," that party lacks standing to challenge the assignment. Connolly v. Deutsche Bank Nat. Tr. Co., 581 F. App'x 500, 507 (6th Cir. 2014).

Esurance relies on a per curiam opinion from the Michigan Court of Appeals for its argument that it has standing to challenge assignments to which it was not a party. See Mot. at 14 (citing Katulski v. CPCA Tr. I, No. 313790, 2015 WL 248655 (Mich. Ct. App. Jan. 20, 2015)). Katulski, however, does not depart from the standard described above; rather, it reaffirms that the holdings from Livonia and its progeny remain in force in Michigan:

> "[T]he debtor may assert as a defense any matter which renders the assignment absolutely invalid or ineffective, or void, such as, the nonassignability of the right attempted to be assigned, or a prior revocation of the assignment. The debtor may also question a plaintiff's lack of title or the right to sue. . . . Obligors of a claim may not defend on any ground which renders the assignment voidable only, because the only interest or right which an obligor of a claim has in the instrument of assignment is to insure him or herself that he or she will not have to pay the same claim twice."

Katulski, 2015 WL 248655 at *3 (quoting 6A CJS, Assignments, § 132) (emphasis omitted).

Esurance asserts several arguments for its position that Hardy's assignments were invalid. The Court addresses each of Esurance's challenges and finds that, because Esurance has not adequately "asserted any of the defenses from <u>Livonia</u>" and it is not "clear that any of the defenses apply," Esurance lacks standing to challenge the assignments.  <u>Connolly</u>, 581 F. App'x at 507.

### 1. Absence of Signatures on Assignments

Esurance asserts that the assignments were invalid because the forms signed by Hardy lack (i) a signature by a witness or by Hardy's attorney, Mot. at 14–15; (ii) a notarization, <u>id.</u> at 15–16; and (iii) a signature for Northland Radiology, which Esurance argues was required to satisfy the statute of frauds, <u>id.</u> at 15–18.

A third party has no standing to challenge the inadequacy of signatures on an assignment or the assignment's compliance with the statute of frauds where it does not raise any <u>Livonia</u> defenses.  <u>See</u> <u>Connolly</u>, 581 F. App'x at 507 (finding that third party had no standing to challenge assignment based on allegedly forged "robo-signatures" because those challenges were not founded in "any of the defenses from <u>Livonia</u>"); <u>Hamilton v. Educ. Credit Mgmt. Corp.</u>, No. 20-CV-10006, 2021 WL 5631219, at *5 (E.D. Mich. Dec. 1, 2021) (finding that student did not have standing to challenge assignment of her student loans based on argument that assignment violated statute of frauds under Michigan law).

None of the <u>Livonia</u> defenses is present in this argument.  Esurance's attack on the absence of signatures does not assert the nonassignability of the assignments, the assignee's lack of title or right to sue, any prior revocation of the assignment, or any other indicator that Esurance is at risk of being double-billed if the assignments stand.  <u>See</u> <u>Livonia</u>, 399 F. App'x at 102.  Like the third parties who alleged inadequate signatures or statute of fraud violations in <u>Connolly</u> and <u>Hamilton</u>,

Esurance's arguments are insufficient to create standing.  Connolly, 581 F. App'x at 507; Hamilton, 2021 WL 5631219, at *5.

### 2.   Northland Radiology's Continued Right to Seek Compensation from Hardy

Esurance notes that the assignments give Northland Radiology the right to seek compensation from Hardy if Northland Radiology does not obtain payment from Esurance.  Mot. at 18–19.  Esurance concludes that, because Hardy has not "not truly assigned the burden of enforcing payment to Plaintiff," the assignments do not "'contemplate a transfer of the right'" given by the assignments as required under Michigan law, id. at 19 (quoting Briscoe v. Eckley, 35 Mich. 112, 114 (Mich. 1876)).

Esurance's argument, again, is divorced from the defenses it is permitted to make as a non-party to the assignments.  Even if Northland Radiology sought compensation from Hardy, Esurance itself would not be "subject to double liability."  Livonia, 399 F. App'x at 102.  This argument has no basis in the defenses delineated by Livonia and reiterated in Katulski, and so it provides no grounds for standing.  Connolly, 581 F. App'x at 507.

### 3.   Elements of Contract Formation

Esurance's attack on the alleged absence of elements required for the formation of a contract fares no better.  Esurance asserts that the assignments are invalid because (i) Hardy misunderstood the terms of the assignments, and so there was no "meeting of the minds," Mot. at 16; and (ii) the assignments lacked consideration due to the fact Hardy remains responsible for the payment of the bills following the assignment, id. at 19–21.  Esurance, however, has no standing to challenge contracts to which it was not a party unless unique factors threaten to burden it with duplicative payment obligations.  Livonia, 399 F. App'x at 102; Katulski, 2015 WL 248655, at *3. Esurance still has not demonstrated that it is at risk of being double-billed or that any of the other

recognized defenses available to a third party challenging an assignment apply.  Thus, it lacks standing to challenge an assignment to which it was not a party.  <u>Connolly</u>, 581 F. App'x at 507.

### 4. Assignment of Future Benefits

Esurance submits that the assignments were invalid because Hardy signed the assignments prior to receiving treatment, and "'[a]n agreement for assignment of a right to benefits payable in the future is void,'" Mot. at 21 (quoting Mich. Comp. L. § 500.3143).

Contrary to Esurance's understanding, the assignments at issue here did not assign rights to benefits payable in the future.  Northland Radiology asserts that Hardy executed a new assignment form on multiple occasions, including every regularly scheduled medical appointment. Resp. at 14.  The forms clarify that the rights assigned to Northland Radiology correspond not to future services, but, rather, to treatments, products, services, and accommodations that Hardy "<u>has received</u>."  Assignments at PageID.874–903 (emphasis added).  Further, each form states that, at the time of execution, Hardy "<u>has incurred charges</u>" with respect to services rendered by Northland Radiology.  <u>Id.</u> (emphasis added).  The present case is thus distinguishable from a case like <u>Bronson Health Care Grp., Inc. v. USAA Cas. Ins. Co.</u>, which found that an assignment was void under Mich. Comp. L. § 500.3143 where the assignment concerned PIP benefits for services not yet performed.  966 N.W.2d 393, 399 (Mich. Ct. App. 2020) ("At the exact moment when [the assignor] signed the assignments, he had no right to any benefits because benefits were not payable unless and until the treatment was received or services were performed.").

Esurance asserts that, notwithstanding the language of the assignments, Hardy in fact signed the forms prior to receiving treatment.  Mot. at 21 (citing Hardy Dep. Tr. at 66 (Dkt. 27-4) (Hardy responded affirmatively to the question: "And do you believe that that's a document that you filled out when you arrived at Northland Radiology prior to the examination?")).  However,

the terms of the assignments cover all services provided in the past, and the latest assignments signed by Hardy are dated July 16, 2020 and January 27, 2021.  See Assignments at PageID.901–903.  Northland Radiology's individual patient report for Hardy indicates that it provided services through July 8, 2019.  See Exhibits to Notice of Removal at PageID.34.  Thus, Hardy properly assigned her rights to payment for past services.  See N. Shore Inj. Ctr., Inc., 2019 WL 939031, at *3 (finding that assignments that assigned to medical providers the right to collect PIP benefits for services that had been rendered "to date" and "on or before the date of execution" were not invalidated by Mich. Comp. L. § 500.3143).

Regardless, Esurance's argument on this point does not concern "the only interest or right which an obligor of a claim has in the instrument of assignment"—that is, "to insure him or herself that he or she will not have to pay the same claim twice." Katulski, 2015 WL 248655, at *3.  Thus, the basis is not a proper foundation for asserting standing.  Connolly, 581 F. App'x at 507.

Esurance has failed to establish that the assignments were void or that it has any other basis for standing to challenge Hardy's assignment of benefits to Northland Radiology.  See Maraulo v. CitiMortgage, Inc., No. 12-CV-10250, 2013 WL 530944, at *7 (E.D. Mich. Feb. 11, 2013) (finding that plaintiffs could not challenge assignment of mortgage under Michigan law because they "allege[d] no facts tending to show that the assignment is void" and "none of the facts alleged indicate that the assignment may subject Plaintiffs to a risk of having to pay their mortgage twice").  There is no doubt that Esurance owes the payments due for Hardy's PIP benefits.  It has suffered no prejudice due to Hardy's decision to assign her right to collect to another party.  Unable to articulate any of the defenses that allow a third party to challenge an assignment made between two other parties, Esurance has no standing to attack the assignments.  Connolly, 581 F. App'x at 507.

### B.  Wrongful-Conduct Doctrine

Esurance argues that Hardy—and her assignee, Northland Radiology—are precluded from recovering PIP benefits under the wrongful-conduct rule.  Mot. at 22–23.  The wrongful-conduct rule is a common law doctrine standing for the principle that "[a] person cannot maintain an action if, in order to establish his cause of action, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party."  Orzel by Orzel v. Scott Drug Co., 537 N.W.2d 208, 212 (Mich. 1995) (punctuation modified, citation omitted).  To implicate this doctrine, the conduct must be "prohibited or almost entirely prohibited under a penal or criminal statute" and "rise to the level of serious misconduct" rather than "only amount[] to a violation of a safety statute."  Id. at 214.  Additionally, the plaintiff's injury "must have been suffered while and as a proximate result of committing an illegal act."  Id. at 215 (punctuation modified, citations omitted).

Esurance submits that Hardy made claims for PIP benefits based on household services she was unable to perform, including taking out her garbage.  Mot. at 8–9 (citing 5/1/19 Hardy Household Services Statement (Dkt. 27-3); Hardy Dep. Tr. at 48).  Esurance argues that these claims were fraudulent because surveillance evidence shows that Hardy was able to carry her trash in one hand on May 31, 2019.  Id. at 9 (citing 7/25/19 Surveillance Report at 6 (Dkt. 27-5); Stephanie Hayes Aff. (Dkt. 27-8)).  Esurance states that Hardy's claim is, therefore, a "fraudulent insurance act" under Mich. Comp. L. § 500.4503, which is a felony under Mich. Comp. L. § 500.4511.[4]  Id. at 22–23.  Esurance argues that there is no genuine dispute of material fact that this fraudulent act precludes both Hardy and the assignee of her rights from recovering PIP benefits.

---

[4] Mich. Comp. L. § 500.4503(a) defines a "fraudulent insurance act" to include "acts or omissions committed by any person who knowingly, and with an intent to injure, defraud, or deceive . . . [p]resents, causes to be presented, or prepares with knowledge or belief that it will be presented to or by an insurer or any agent of an insurer, or any agent of an insurer, reinsurer, or broker any oral or written statement knowing that the statement contains any false information concerning any fact material to an application for the issuance of an insurance policy."

Id. at 23 (citing Bahri v. IDS Prop. Cas. Ins. Co., 864 N.W.2d 609 (Mich. Ct. App. 2014)). Northland Radiology responds that, even if Hardy did commit fraud, Northland Radiology's claims are not barred.  Resp. at 17–18 (citing Meemic, 954 N.W.2d 115).

The Court examines (i) whether there is any genuine issue of material fact as to whether Hardy's allegedly fraudulent statements preclude her claims under the wrongful-conduct doctrine; and (ii) whether, if Hardy's claims are so barred, the claims of her assignee are also barred.

### 1.  Hardy's Alleged Fraud as Wrongful Conduct

Esurance cites to Orzel for the wrongful-conduct standard, see Mot. at 22–23, but  Esurance fails to acknowledge Orzel's statement that the doctrine applies only if the plaintiff's injury was "'suffered while and as a proximate result of committing an illegal act,'" 537 N.W.2d at 215 (quoting Manning v. Noa, 76 N.W.2d 75, 78 (Mich. 1956)) (finding that plaintiff's illegal conduct of participating in an illegal bingo game at church did not preclude suit in negligence against church after plaintiff fell in a hole on her way home) (other citations omitted).

Indeed, the wrongful-conduct rule "applies to activities or behavior that occur prior to, and are causative of, the injury." Shelton v. Auto-Owners Ins. Co., 899 N.W.2d 744, 751 (Mich. Ct. App. 2017) (noting that the court "would reject" insurer's argument that a claimant's no-fault claim was barred by the wrongful-conduct rule—though not reaching this issue—based on the claimant's allegedly fraudulent claims submitted after the claimant suffered an injury) (citing Orzel, 537 N.W.2d at 215; Cervantes v. Farm Bureau Gen. Ins. Co. of Mich., 726 N.W.2d 73, 77 (Mich. Ct. App. 2006) (finding that claimants' illegal entry into the country was not "wrongful conduct" barring their claim for PIP benefits because "the wrongful conduct rule only applies if a plaintiff's wrongful conduct is a proximate cause of his injuries") (punctuation modified, citation omitted)).

The injury alleged by Northland Radiology is Esurance's failure to pay for services provided by Northland Radiology to treat Hardy for injuries suffered in a car accident. According to Northland Radiology's individual patient detail report for Hardy, the services that Northland Radiology provided to Hardy occurred between April 1 and July 8, 2019. See Exhibits to Notice of Removal at PageID.33–34. The wrongful conduct alleged by Esurance consists of Hardy's claim for household services for the month of April 2019, to be performed by Edward Hardy. See 5/1/19 Hardy Household Services Statement.[5]

Esurance cannot establish an absence of material fact as to whether the injury asserted by Northland Radiology occurred "while and as a proximate result of" Hardy's allegedly fraudulent statement. Orzel, 537 N.W.2d at 215 (punctuation modified). Hardy's claims for household services have no causal connection to Northland Radiology's claims for services provided at a diagnostic center, and Esurance does not argue that they do. Shelton featured similar facts. There, an insurer argued that a claimant's fraudulent claims—based on the insurer's observations that the claimant walked without a back brace and hung up laundry, allegedly contradicting her representations to her insurer—precluded her claims under the wrongful-conduct doctrine. Shelton, 899 N.W.2d at 750–751. The court stated that the insurer had failed to establish that the alleged wrongful activity had occurred prior to and was causative of the injury, and it affirmed the denial of summary disposition for the insurer. Id. at 751. Similarly, Esurance has failed to establish that Hardy's allegedly fraudulent statement—relating to her ability to take out garbage— occurred prior to and was causative of Northland Radiology's asserted injuries. Summary judgment for Esurance is properly denied on these facts. See Scott, 550 U.S. at 380.

---

[5] The Court has no additional information on the identity of Edward Hardy.

Further, there is a genuine issue of material fact as to whether Hardy's statements were even fraudulent.  Esurance submits that Hardy's ability to take out the trash on May 31, 2019 demonstrates that her claimed need for household services in April 2019 was fraudulent, but Esurance fails to address the possibility that Hardy made a recovery between the time of her claims and the time of the surveillance report.  Esurance also makes no attempt to argue that Hardy submitted her statements "with an intent to injure, defraud, or deceive."  Mich. Comp. L. § 500.4503(a).  Significant questions of fact remain open on this allegation, and so summary judgment is improper.  See Scott, 550 U.S. at 380.

### 2.  Assignee's Right to Recover

Esurance asserts that a provider cannot recover PIP benefits when the underlying claimant is barred from doing so, relying on Bahri, 864 N.W.2d 609.  Mot. at 23.  Northland Radiology maintains that it can recover even if Hardy is barred from making claims because Bahri has been limited by Meemic, 954 N.W.2d 115.  Resp. at 17–18.  As discussed above, the Court finds that Esurance is unable to show that there is no genuine dispute of material fact that the wrongful-conduct doctrine would bar Hardy's claims, but it proceeds to consider this additional argument briefed by the parties.

Bahri and Meemic concern not the wrongful-conduct doctrine but, rather, the interplay between (i) the No-Fault Act, which mandates coverage of PIP benefits by insurers, and (ii) each individual insurance policy, which "controls the interpretation of its own provisions providing benefits not required by statute."  Meemic, 954 N.W.2d at 120 (punctuation modified).

On its face, Bahri supports Esurance's position.  Bahri found that an individual plaintiff was barred from seeking PIP benefits from her insurer under the policy's express terms because she had submitted fraudulent statements.  864 N.W.2d at 612.  The court held that the insured's

12

medical providers were likewise barred from recovery, explaining: "[b]ecause intervening plaintiffs stood in the shoes of the named insured, if plaintiff cannot recover benefits, neither can intervening plaintiffs." Id. (citing TBCI, P.C. v. State Farm Mut. Auto. Ins. Co., 795 N.W.2d 229, 232 (Mich. Ct. App. 2010) (finding that plaintiff health care provider was barred by res judicata from challenging earlier judgment—which found that the insured party could not recover benefits because he had submitted fraudulent statements—because "Plaintiff, by seeking coverage under the policy, is now essentially standing in the shoes of [the insured]" and so "there is also no question that plaintiff, although not a party to the first case, was a 'privy' of [the insured]")).

However, the law has moved since Bahri.  In Meemic, the Michigan Supreme Court addressed a circumstance in which the son of two insured parties—not himself party to the insurance agreement but covered under the policy's "resident relatives" provision—sought PIP benefits following a car accident, and the insurer attempted to deny coverage based on fraudulent statements for attendant care submitted by his parents in violation of the policy.  954 N.W.2d at 118.   The court determined that an insurer can deny PIP benefits mandated by the No-Fault Act on the basis of fraud only if the insurer's fraud defense was available at common law.  Id. at 123. At common law, "the defrauded party could only seek rescission, or avoidance of the transaction, if the fraud related to the inducement to or inception of the contract." Id. at 125.  In contrast, post-procurement fraud generally would not warrant rescission or avoidance of the contract.  Id. at 125–126.  The court found that "Meemic's contract-based fraud defense fails because it is not the type of common-law fraud that would allow for rescission," noting that the "fraudulent attendant-care bills submitted by [the son's] parents neither induced Meemic to enter into the policy nor deceived Meemic as to the contents of the policy." Id. at 126–127.

The <u>Meemic</u> court recognized the tension between its holding and the decision in <u>Bahri</u>, and it cited <u>Bahri</u> as an example of a case "uph[olding] a fraud-exclusion provision when the fraud related to proof of loss on a claim rather than fraud in the procurement or execution of the policy." <u>Id.</u> at 125 n.15. <u>Meemic</u> noted that <u>Bahri</u> had been limited to circumstances "when the claimant is an insured under the defendant's policy." <u>Id.</u> (citing <u>Shelton</u>, 899 N.W.2d at 747–750) (finding that "the law governing application of the policy exclusion in <u>Bahri</u>" was not applicable because the plaintiff was not a party to nor an insured person under the policy but instead was owed benefits pursuant to the No-Fault Act, noting that <u>Bahri</u> had denied coverage to a party to the insurance contract)). The <u>Meemic</u> court declined to address "whether and to what extent fraud related to proof of loss can justify voiding the policy" because, in the case before it, there was no allegation of fraud in relation to the <u>son's</u> (as opposed to the policyholders') claim for benefits. <u>Id.</u> The court further observed that "[a] leading treatise has explained that 'to avoid a policy on the ground of fraud or false swearing in the proof of loss, the statement in question must be material.'" <u>Id.</u> (quoting 13A Couch, Insurance, 3d (2019 rev. ed.), § 197:18 at 48–49).

Based on the Michigan Supreme Court's decision in <u>Meemic</u>, the Michigan Court of Appeals has determined that "<u>Bahri</u> remains good law only to the extent that it is consistent with the no-fault act and common law as explained in <u>Meemic</u>. In other words, it applies only in cases of fraud in the inducement." <u>Williams v. Farm Bureau Mut. Ins. Co. of Michigan</u>, 967 N.W.2d 869, 871, 875 (Mich. Ct. App. 2021) (reversing grant of summary judgment to defendant insurer based "solely on the allegations of postprocurement fraud" allegedly made by claimant seeking PIP benefits); <u>see also</u> <u>Ferndale Rehab. Ctr. v. Allstate Ins. Co.</u>, No. 351478, 2021 WL 2024720, at *4 (Mich. Ct. App. May 20, 2021) (identifying <u>Bahri</u>, 864 N.W.2d 609 as having been abrogated by <u>Williams</u>, 967 N.W.2d 869).

The Court concludes that <u>Bahri</u>—Esurance's only basis for asserting that Hardy's inability to recover bars Northland Radiology from recovering—is not applicable here.  Hardy's alleged fraud did not relate to "the procurement or execution of the policy," but rather "proof of loss on a claim."  <u>Meemic</u>, 954 N.W.2d at 125 n.15.  <u>Bahri</u> applies only if there was fraud in the inducement of the parties' entry into the insurance policy.  <u>Williams</u>, 967 N.W.2d at 875.  Esurance's assertion that Hardy's alleged fraud precludes Northland Radiology's recovery has no foundation in law.

Additionally, even if Michigan law were stretched to apply <u>Bahri</u> to this case, <u>Meemic</u> suggests persuasively that denial of coverage for fraudulent proof of loss submissions would be appropriate only if the fraudulent statement were "material."  <u>Meemic</u>, 954 N.W.2d at 125 n.15 (punctuation modified, citation omitted).  There is a question of fact as to whether Hardy's statement that she required household services to take out garbage in April 2019 was fraudulent at all, never mind as to whether that statement was material.  Esurance has not carried its burden of demonstrating an absence of genuine issues of material facts as to its claim that Hardy's recovery bars Northland Radiology's recovery, and so summary judgment must be denied.  <u>See</u> <u>Scott</u>, 550 U.S. at 380.

### III.  CONCLUSION

For the foregoing reasons, the Court denies Esurance's motion for summary judgment (Dkt. 27).

SO ORDERED.

Dated:  March 29, 2022                    s/Mark A. Goldsmith
    Detroit, Michigan                    MARK A. GOLDSMITH
                                              United States District Judge